## E. P. MORGAN v. J. L. DARRAGH.

1. Where D. took a negro woman to an auctioneer in the evening, telling · him to sell her for what she would bring, and the auctioneer could not sell then, as there were to be no more sales that day, but told D. to bring her the following morning and he would sell her, the negro appearing in · the morning, according to the previous understanding, telling the auctioneer she had come to be sold; *held,* sufficient authority for the · auctioneer to sell, and the adjudication or striking off the property in

due course of auction sales was binding on D., and passed title to the purchaser.

2. In a public sale by an auctioneer, where there is an apparent authority to sell, the sale will be binding, notwithstanding the secret intention of the owner not to sell.

APPEAL from Harris. Tried below before the Hon. Peter W. Gray.

This suit was brought by Morgan against Darragh in December, 1857, in the District Court of Galveston county, to recover a negro woman bought by him at the auction sale of E. L. Ufford, an auctioneer in the city of Galveston.

Darragh appearing, filed his cross-petition alleging plaintiff had forcibly taken the negro from defendant, and sequestrated the property, which was replevied by plaintiff.

At the Spring term, 1859, the case was removed, on motion of the defendant, to Harris county, and at the Fall term of that year defendant Darragh recovered judgment for $850, value of the slave, and $450 for her services, from which plaintiff appealed to the Supreme Court. Defendant claimed that he took the negro to the auction room to frighten her, and not with any intention of parting with her.

The other facts are sufficiently stated in the opinion of the court.

*W. A. Blackburn,* for appellant.—The presence of the negro at the auction store for the purpose of sale was of itself enough to compel the defendant to clearly prove the wrongful possession of the auctioneer, and without showing conclusively such wrongful possession the sale of the negro by him was good, and the property vested in the purchaser the moment the auctioneer's hammer fell. (Story on Agency, Secs. 27, 107.)

Placing the negro in the possession of Ufford made him defendant's general agent for the purpose of selling the negro as to all the world, and "if a general agent receive particular instructions which he disregards, his acts as agent are nevertheless binding upon his principal, and although authorized to sell an article at a particular price and he sell for less, the sale is good." (Tradesman's Bank v. Astor *et als.*, 11 Wend., 87.)

Ufford being the authorized agent of Darragh, acting, as far as Morgan could see, within the scope of his authority, Darragh is bound by his acts, and his verbal declarations at the sale are admissible against the principal, and binding on him as an incident to his authority to sell.   (11 Wend., 88.)

"Strangers can only look to the acts of the parties and the external *indicia* of property, and not to the private communications which may pass between a principal and his agent; and if a person authorize another to assume the apparent right of disposing of property in the ordinary course of trade, it must be presumed that the apparent authority was the real authority.

"If the principal sends his commodity to a place where it is the ordinary business of the person to whom it is confided to sell, it must be intended that the property was sent there for the purpose of sale.   Where a commodity is sent in such a way, and to such a place as to exhibit an apparent purpose of sale, the principal will be bound and the purchaser safe." (Pickering v. Busk, 15 East, 34, new ed.)

No brief for the appellee was furnished the Reporters.

WALKER, J.—This was a suit by Morgan against Darragh, brought in the District Court of Galveston county in 1857, to recover a negro woman.   Morgan claimed to

have purchased the woman at the auction sale of one E. L. Ufford.

The woman appears to have been sold as the property of John L. Darragh, who brought her to the auction store of Ufford and gave him directions to sell her.

For some reason she was not sold on the day she was brought to the auction room, but on the morning of the following day she presented herself to the auctioneer in neat, clean clothing, telling him she had come to be sold.

In pursuance of Darragh's directions of the previous day the auctioneer put her up and sold her. She was struck off to Morgan at his bid of $210..

He received her from the auctioneer and took her home and returned to the auction room, where he tendered the money he had bid for the slave to the auctioneer, who refused to accept it; Darragh in the meantime having come to the auction room, protested against the sale, and it would seem that angry words, followed by blows, touching the matter, passed between Morgan and Darragh.

Darragh claims that it was not his intention to have the woman sold, but merely to frighten her into good behavior. It does not appear, however, that he advised Ufford of any such intention, or at any time recalled or qualified his directions to sell the woman, nor does it appear from the evidence that there was any collusion or fraud between the auctioneer and Morgan. Darragh filed a cross-petition praying for a writ of sequestration and for damages, and for value of the slave's services. The writ of sequestration was issued and executed, and on the same day Morgan replevied the slave.

There have been two mistrials in the case; on the third trial Morgan recovered the slave, but the court, on the defendant's motion, granted a new trial.

On motion of the defendant, the venue was changed to

Harris county, and at the Spring term, 1860, the cause again came on for trial.

The jury returned their verdict for the defendant, giving him $850 as the value of the slave, and $450 for her services.

The court was asked to give the following charges:

"1. If they believed from the evidence, that Darragh requested Ufford, the auctioneer, to sell the negro slave Lette at public auction the next day, and that Ufford, acting upon the request and representations of Darragh, put up the said slave for sale at public auction, on the day so designated, and the plaintiff bid upon said slave, at such sale, without knowledge of any contrary intention or purpose of Darragh, even any secret intention or purpose of said Darragh, not to let the said slave be sold in fact, or not to have her put up for sale, cannot affect the validity of the sale, and the jury will not take into consideration such secret intention or purpose of said Darragh.

"2. If the jury believed from the evidence, that Darragh was apprised on the morning of the day of sale that said Lette had gone to Ufford's auction room to be sold, or was about to go, and did not interfere to stop said sale or restrain said slave until after she had been struck off to Morgan, he had no right to call in question the validity of the sale to Morgan, so far as he was concerned, afterwards.

"3. That under the circumstances contemplated by the above requested instructions, Darragh would have no right to complain of inadequacy of price, or any other matter connected with the sale, which he might have prevented, to the prejudice of Morgan.

"4. That there exist necessarily no privity between the owner of property sold at public auction and the purchaser. The auctioneer having possession, coupled with

an interest in such property, is entitled to sue for and recover the price in his own name from the purchaser. That his adjudication, or striking off the property in due order of auction sales, consummates the sale; and if he deliver the property to the purchaser, even without payment, or tender of payment, to himself from the purchaser, there being no fraud or collusion between them, and the purchaser having no notice of any objection or cause of complaint urged by the owner, the owner cannot claim the property from the purchaser, the same being absolutely his; and the owner must look to the auctioneer for redress, if he has sustained a loss."

These charges contain the law of the case, and should have been given to the jury. The charge given is mainly a correct exposition of the law; but there are passages in it calculated to mislead the jury, and no doubt did mislead. For instance, this passage occurs in the charge, and is not explained, and is not the law of this case:

"But if you believe otherwise, from the evidence, that Darragh did not in fact intend to sell the slave at auction, and that his instructions or conversation with Ufford were not such, under the circumstances, as would fairly justify, or reasonably cause, Ufford, as a prudent man, to understand that he did intend to have her sold, without reservation, and that the slave was not delivered or sent to Ufford by Darragh for sale, but that she went of her own accord, without orders, then you will find for the defendant."

Now, the law would be this: If Darragh, on a day specified, took the slave to Ufford, and told him he wanted her sold on the following day, and the slave came, telling Ufford that she came to be sold, and Ufford sold her, the purchaser would take her as his property, whether Darragh delivered her or sent her to be sold on

the morning of the sale or not; for the sale would be made in accordance with his previous instructions.

More than one such passage as this occurs in the charge, and they were not called for by the evidence, nor are they sound law.

The judgment of the District Court must be reversed and the cause remanded.

Reversed and remanded.